IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| ALPHA PROTECTIVE SERVICES, INC., | : | Case No. 12-70482 |
|     Debtor. | : | Chapter 7 |

| | | |
|---|---|---|
| NEIL C. GORDON, as Trustee in Bankruptcy | : | |
| for Alpha Protective Services, Inc., | : | |
|     Plaintiff, | : | |
| v. | : | Adversary Proceeding |
| | : | No. 14-07017 |
| AMERICAN PAWN SHOP, INC., as an | : | |
| Initial Transferee or as Immediate Transferee; | : | |
| ALPHA CONSULTING ENGINEERS, LLC, | : | |
| f/k/a ALPHA CONSTRUCTION & | : | |
| ENGINEERING, LLC f/k/a APS-AEC, LLC, | : | |
| as Initial Transferee or as conduit to | : | |
| American Pawn Shop, Inc., | : | |
|     Defendants. | | |

**MEMORANDUM IN SUPPORT OF MOTION FOR
MOTION FOR FULL OR PARTIAL SUMMARY JUDGMENT
AND FINAL JUDGMENT UNDER R.BANKR.PRO. 7054(a)**

COMES NOW Neil C. Gordon, as Trustee in Bankruptcy for Alpha Protective Services, Inc. (herein "Plaintiff" or "Trustee"), through counsel, and makes this Memorandum in Support of Motion for Full or Partial Summary Judgment and Final Judgment Under R.Bankr.Pro. §7054(a), and says the following:

**I.**  **STATEMENT OF THE CASE**

The Debtor filed a voluntary Chapter 11 bankruptcy case on April 12, 2012, and was converted to one under Chapter 7 on December 20, 2012. Neil C. Gordon was appointed as Trustee on the same date as the conversion. Trustee has bought an adversary proceeding against Defendant, American Pawn Shop, Inc. (herein "American Pawn" or "Defendant") for recovery of a certain sizeable payment as fraudulent preferential.

## II. STATEMENT OF THE FACTS[1]

The Debtor was subject to levy by creditors and could not use its regular banking accounts. It commenced using the banking accounts of another company for which it had a relationship, and used those accounts as a conduit to make its own payments in order to escape claims of creditors.

Debtor's President, Jeffrey Brinson (herein "Brinson"), made pawn tickets with Defendant in order to secure a debt in advance of $111,000.00, which was made on an emergency basis in order to make payroll, within days of bankruptcy case filing. The pawn tickets were all executed individually by Brinson, none were executed by the Debtor. All of the collateral, with the possible exception of a tractor and front-end loader of a nominal value of $10,000.00, belong to Brinson personally or to one of his other companies (a company other than the Debtor, Alpha Protective Services, Inc.). Alpha did not sign any document by which it agreed to lend any of its collateral to secure the debt owed to American Pawn.

The advance was made by American Pawn eight (8) days prior to case filing and was repaid three (3) days prior to case filing. It was repaid by a cashier's check showing Debtor as remitter. While the advance was in the amount of $111,000.00, the repayment was $122,875.00, which included finance charges of $11,875.00, which was a $2,000.00 discount from finance charges of $13,875.00, which was the finance charges collectible under the terms of the pawn tickets.

The Debtor, Alpha, gave nothing of value to American Pawn in exchange for the payment, which went to the benefit of Brinson who had signed the pawn tickets, and his assets were put up as collateral.

By the Defendant's own admission, this was an extraordinary transaction and, if it could be characterized as a preferential payment, was on a debt not incurred in the ordinary course of business of the Debtor and was not an ordinary course of business payment.

Also, by Defendant's own admission, there are not facts to support the proposition that the Debtor was solvent at the time the payment was made.

---

[1] A Statement of Material Facts as to Which There is no Genuine Issue has been filed and is not restated here. The text above includes a short recitation of the facts.

### III. ISSUES OF THE LAW

The Trustee believes that this Motion states eight (8) discreet issues of law or mixed questions of fact and issues of law as follows:

1. *Do the facts make out a prima facie claim for recovery of a fraudulent transfer in the amount of $122,875.00, as set forth in the motion for summary judgment and final judgment under R.Bankr.Pro. §7054 filed against this defendant?* Trustee submits that this issue must be answered in the affirmative as a matter of law, as there was no obligation owed by the Debtor to American Pawn and nothing else given of value to American Pawn in exchange for the payment.

2. *Alternatively, if the Court determines that the transfer was not fraudulent because there existed some obligation from defendant alpha to defendant American Pawn to pay $122,875.00, do the facts make out a prima facie claim for recovery of a preference in the amount set forth in the motion against the defendant and above?* Trustee submits that this issue must be answered in the affirmative as a matter of law.

3. *In the event that the Court determines that there was an enforceable obligation in favor of the Defendant and against Debtor, Alpha, was there any new value given to make out a contemporaneous exchange of value so that the transfer could be shielded as a contemporaneous exchange under 11 U.S.C. §547(c)(1)?* Trustee submits that, as a matter of law, there was not such value given and, therefore, no contemporaneous exchange for purposes of 11 U.S.C. §547(c)(1).

4. *In the event that the Court determines that there was an enforceable obligation in favor of the Defendant and against Debtor, are there any facts that would support an ordinary course of business defense under 11 U.S.C §547(c)(2)?* Trustee submits that this issue must be answered in the negative as the debt was an extraordinary debt and paid in an extraordinary way.

5. *In the event that the Court determines that there was an enforceable obligation in favor of the Defendant and against Debtor, are there any facts that would support the extension of new value to the Debtor, prior to the filing of the bankruptcy case, such as would form the basis of a defense under 11 U.S.C. §547(c)(4)?* Trustee submits that this issue must be answered in the negative as no new unpaid advances were extended prior to the filing of the bankruptcy case, so, as a matter of law, there can be no defense made out under 11 U.S.C. §547(c)(4).

6. ***Are there any other defenses, including the assertion that the claim is not "equitable," which would prevent award of the avoidance of the fraudulent transfer or preference as to this Defendant?*** Trustee submits that this issue must be answered in the negative.

7. ***Is the Trustee entitled to recover for the avoided transfer under 11 U.S.C. §550?*** Trustee submits that this must be answered in the affirmative as the Trustee is entitled to avoid and recover the value of the transfer under that Code section.

8. ***Should a "final judgment" be entered against the Defendant, but not against Defendant Alpha Consulting Engineers, LLC (herein "AEC")?*** Trustee submits that there is no just cause for delay in entering the final judgment against Defendant American Pawn, and that this issue must be answered in the affirmative.

## IV. ARGUMENT OF THE LAW

### A. *Prima Facie* Case is Established as a Fraudulent Transfer.

The *prima facie* case is made out for avoidance of the payment as a fraudulent transfer. 11 U.S.C. §548(a) succinctly sets up the *prima facie* case to be made by the Trustee in order to avoid a fraudulent transfer. This Code section states as follows:

> "(1) the trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily–
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> (B)
> (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)
> (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to

> engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

Id. The Trustee makes his case out under §548(a)(1)(B) as a claim for recovery of a transfer for less than equivalent value made by a Debtor who is insolvent.

The payment in question was made by the Debtor within four (4) days of filing of the bankruptcy case. There was no consideration for the payment other than satisfaction of the debt owed, not by the Debtor, but by the Debtor's President, Brinson. The Debtor received no consideration at all.

While there is no presumption of insolvency, the Defendant freely admits that there is no evidence to put forth that the Debtor was solvent and, four (4) days after the payment was made when the Debtor filed bankruptcy, the Debtor's schedules show a balance sheet lack of solvency in an amount in excess of $4 million.

While the Trustee's review of the schedules suggested that this was a repayment of an obligation owed by the Debtor and, therefore, a preference, it simply was not. The Debtor did not owe anything to the Defendant American Pawn, so that the payment was simply a fraudulent transfer directly to Defendant American Pawn and for the benefit of the Debtor's President, Brinson, who was the account debtor.

There is no genuine issue of material fact to support any proposition other than that the transfer was avoidable against American Pawn as a fraudulent transfer.

### B.    *Prima Facie* Case is Established for Avoidance as a Preference.

Alternatively, a *prima facie* case is made out for the avoidance of the payment as preferential.

If the Trustee is wrong in his contention that the payment was fraudulent, and the Defendant can create a basis for a legal conclusion that the Debtor was obligated to the Defendant, then the payment was preferential and avoidable under 11 U.S.C. §547(b).

11 U.S.C. §547(b) sets up the elements of the *prima facie* case for a preference avoidance.

This code section provides as follows:

> "(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
>    (A) on or within 90 days before the date of the filing of the petition; or
>    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if–
>    (A) the case were a case under chapter 7 of this title;
>    (B) the transfer had not been made; and
>    (C) such creditor received payment of such debt to the extent provided by the provisions of this title."

The Supreme Court has made a simple expression of what a preference is when it said that a preference is "a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate." *Union Bank v. Wolas*, 502 U.S. 151, 160-161, 112 S.Ct. 527, 533 (1991). The idea behind preference avoidance is to prevent creditors from "racing to the courthouse to dismember the debtor during the slide into bankruptcy" and "facilitate the prime bankruptcy police of equality of distribution among creditors of the debtor." *Wolas*, 502 U.S. 161, 112 S.Ct. 533 (1991). In the instant case, the Defendant was a company owned by a friend of the Debtor who had made an advance to the Debtor's principal to help cover company payroll, and was paid back immediately prior to case filing. This is exactly the type of transaction to which the Supreme Court was talking about in *Wolas*, and to which 11 U.S.C. §547 is directed.

Defendant does not deny that payment was made by the debtor and there was an antecedent debt, although Trustee submits that Defendant cannot prove the debt was owed by the Debtor.

Defendant can offer no evidence that the debtor was solvent three days prior to the filing of its bankruptcy case, and therefore cannot make an issue of solvency. Debtor is presumed insolvent for preference purposes.

The Defendant attempts to assert that the Trustee has failed to make out his *prima facie* case because he cannot establish an improvement of position because the debt was secured. The debt was secured, but it was not a debt of the Debtor and it was not secured by the Debtor's collateral. To the extent that there was an attempt to secure the debt with collateral belong to the Debtor, that attempt fails.

A security interest attaches to collateral when it becomes enforceable against the Debtor with respect to the collateral. Ga. Code Ann. § 11-9-203(a). In order for a security interest to become enforceable, several conditions must be met. Ga. Code Ann. § 11-9-203(b).

First, value must be given. Ga. Code Ann. § 11-9-203(b)(1), see also § 11-1-204 (definition of "value").

Second, Debtor has rights in the collateral or the power to transfer rights in the collateral to a security party. Ga. Code Ann. § 11-9-203(b)(2). According to the UCC Comment for § 11-9-203(b)(2), "a security interest attaches only to whatever rights a debtor may have, broad or limited as those rights may be." Id., Comment 6; *see also* ("it was necessary for [the debtor] to have 'rights' in the property before the security interest attached.") *Babson Credit Plan, Inc. v. Cordele Prod. Credit Ass'n*, 146 Ga. App. 266, 271, 246 S.E.2d 354, 358 (1978).

Third, the Debtor has an authenticated valid security agreement; if the collateral is not a certificated security, it is the possession of the secured party; if the collateral is a certificated security, the certificate is in the possession of the secured party; if the collateral is deposit accounts, chattel paper, letter of credit rights, or electronic documents, it is in the possession of the secured party. Ga. Code Ann. § 11-9-203(b)(3).

Applying these prerequisites to the Alpha case, there is no security interest attached to property owned by Alpha.

First, Alpha did not receive value for the security interest given in its collateral. It failed to receive a binding commitment to extend credit, a security itself, delivery of a purchase, or any consideration to support a simple contract to qualify as "value" under § 11-1-204.

Second, Debtor did not have rights in the collateral or the power to transfer rights in the collateral to a security party, which almost all belonged to Brinson. Defendant's best argument would be that Brinson was acting as agent of Debtor under Ga. Code Ann. § 10-6-2 (West). However, the president of a corporation cannot generally borrow money on behalf of the corporation, and no loan is binding when the corporation received none of the proceeds of the loan. *Farmers' & Merchants' Bank of Toccoa v. Stovall Inv. Co.,* 50 Ga. App. 277, 177 S.E. 882 (1934)

Third, Alpha did not authenticate the security agreement. See, *First Nat. Bank of Atlanta v. C. & S. Concrete Structures, Inc.,* 128 Ga. App. 330, 196 S.E.2d 473 (1973). To the extent collateral (a tractor and front-end loader, worth $10,000.00 on a $111,000.00 debt) did belong to Debtor Brinson, he individually lacked the ability to pledge it and Debtor never signed anything that would answer to the description of a security agreement.

    **C.**    **"Substantially Contemporaneous Payment" Defense Cannot be Made Out.**

For the Defendant to make out a case that the payment was contemporaneous exchanged for value, some "value" must have returned to Debtor.

    **1.**    *General Standard.*

Under §547(c)(1), a debtor-in-possession cannot avoid a transfer to the extent that the transfer was intended by the debtor and the creditor as a contemporaneous exchange for new value and was in fact a substantially contemporaneous exchange between the parties. In re *Gen. Time Corp.*, 328 B.R. 243, 246 (Bankr. N.D. Ga. 2005), citing 11 U.S.C. § 547(c)(1)(2004).

    **2.**    *Requirements of Affirmative Defense.*

A party asserting an affirmative defense under §547(c)(1) has the burden of showing each of the following by a preponderance of the evidence: (i) the value the creditor received from the debtor by the payment is equal to the value that the debtor received in exchange for the payment or there is new value exchanged between the parties; (ii) both the creditor and debtor intended for the exchange to be contemporaneous; and (iii) the exchange of payment for value given was substantially contemporaneous. Id, 246. See also, *Ellenberg v. Plaid Enterprises, Inc. (In re T.B. Home Sewing Enterprises, Inc.*), 173 B.R. 790, 795-97 (Bankr. N.D. Ga.1993). Here, the Defendant has failed to satisfy all the three (3) requirements of the affirmative defense.

### 3. *New Value.*

The first element under §547(c)(1) requires that defendant show that there was an exchange of "new value" between the parties. "New value" is defined under the Code as money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation. Id., 247, citing 11 U.S.C. § 547(a)(2)(2004). The record does not reveal any "new value" moved to the Debtor as a result of the payment and, at that point, the inquiry stops.

### 4. *Intention.*

In addition to proving "new value" was exchanged, Defendant has to establish that both the debtor and creditor intended the exchange in question to be contemporaneous. 11 U.S.C. § 547(c)(1)(2004). When addressing whether parties intend for an exchange to be contemporaneous, courts consider whether the evidence shows a manifestation of desire between the parties that the exchange be a contemporaneous grant of money or money's worth in goods, services, credit, or property to the debtor. *In re Gen. Time Corp.*, 248, citing *Everlock Fastening Systems, Inc. v. Health Alliance Plan (In re Everlock Fastening Systems, Inc.)*, 171 B.R. 251, 255 (Bankr. E.D. Mich.1994). In the absence of testimony regarding the state of mind the parties, the court may infer intent or lack thereof from documents available on the record, specifically the payment due dates. *In re David Jones Builder, Inc.*, 129 B.R. 682, 696 (Bankr. S.D. Fla. 1991).

Since the was not "new value" extended, there could be no "intent" to extend new value.

### 5. *Substantially Contemporaneous.*

Where there is a time lapse between the exchange of value as in this case, courts must inquire into whether the exchange was "substantially contemporaneous" under §547. The Eleventh Circuit has not established a per se rule whereby the exchange of value must be made within a set time period to qualify as "substantially contemporaneous." Instead, courts consider the individual circumstances of each case. *In re Gen. Time Corp.*, 248-249, see also *In re Hedrick*, 524 F.3d 1175, 1185-1191 (11th Cir. 2008) amended on reh'g in part, 529 F.3d 1026 (11th Cir. 2008); *In re Dorholt, Inc.*, 224 F.3d 871, 874 (8th Cir. 2000); *In re Marino*, 193 B.R. 907, 915 (B.A.P. 9th Cir. 1996) aff'd,

117 F.3d 1425 (9th Cir. 1997); and *Pine Top Ins. Co. v. Bank of Am. Nat. Trust & Sav. Ass'n.*, 969 F.2d 321, 328 (7th Cir. 1992).

Again, since there was no "new value," there was nothing to be "substantially contemporaneous."

### D. Ordinary Course of Business Defense Cannot be Made Out.

To the extent that payment was preferential, Defendant relies on the "ordinary course of business" defense articulated in 11 U.S.C. §547(c)(2) which excepts from avoidance transfers described as follows:

> ". . . to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was–"

The burden of proof is on the Defendant to establish the elements of the ordinary course of business defense. *Barrett Dodge Chrysler Plymouth, Inc. v. Crenshaw*, (*In re Isaac Leasvco, Inc.*), 381 F.3d 1205, 1210 (11th Cir. 2004); *In re Firstline Corp.*, 2008 W.L. 2246902, *3 (B.Ct. M.D. Ga. 2008). Prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 119 Stat. 213 (enacted April 20, 2005) (herein "BAPCPA"), it was necessary for a defendant to prove all three (3) elements of the ordinary course of business defense.

After the BAPCPA, the defendant need only prove two (2) of the elements of the defense: he must prove that the debt was incurred in the ordinary course of business and that the debt was repaid in the ordinary course of business, as defined by the course of business of the parties, or, alternatively, that the repayment was made according to ordinary business terms. *In re Firstline Corp.*, 2008 W.L. 2246902, fn. 3 (B.Ct. M.D. Ga. 2008).

#### 1. *Debt was not incurred in the ordinary course of business*.

To determine whether or not the debt was incurred in the ordinary course of business, courts look to whether or not the debt was incurred in a "typical arms length commercial transaction that occurred in the marketplace." *In re Firstline Corp.*, *3.

Put another way, a debt is not incurred in the ordinary course of business if it is "incurred unusually during a slide into bankruptcy." *In re Gaines*, 502 B.R. 633, 640 (B.Ct. M.D. Ga. 2013).

The debt on which the assailed preferential payment was made was incurred between the Debtor and an employee, on a short-term basis, in order to make payroll. It was incurred immediately prior to case filing and was repaid immediately prior to case filing. It is almost definitionally a debt incurred unusually and as the Debtor was on a slide into bankruptcy.

Since the debt was not incurred in the ordinary course of business, the inquiry stops: it does not matter whether it was repaid in the ordinary course of business, under either of the two (2) alternative tests, or not.

### 2. *Debt was not paid during the ordinary course of business between the Debtor and the transferee*.

It is articulated by this Middle District of Georgia Bankruptcy Court in *In re Firstline Corp.*, 2008 W.L. 2246902, *4 (B.Ct. M.D. Ga. 2008), and *Johnson Industries, Inc. v. CB&T Bank* (*In re Johnson Industries*), 357 B.R. 907, 915-916 (B.Ct. M.D. Ga. 2006), the Court considers four (4) factors on analyzing whether a payment is made in the ordinary course of business as between the parties:

> "(a)  the length of time the parties were engaged in the transaction at issue;
>
> (b)  whether the amount or form of tender differed from past practices;
>
> (c)  whether the debtor of the creditor engaged in an unusual collection or payment activities; and
>
> (d)  the circumstances under which the payment were made."

Id. See also, *In re Gaines*, 502 B.R. 633, 641 (B.Ct. M.D. Ga. 2013), citing to *Marathon Oil v. Flatau* (*In re Craig Oil Co.*), 785 F.2d 1563 (11th Cir. 1986), in articulating the same standards in slightly different language.[2]

---

[2] Judge Sacca expressed the factors to be considered as follows:
> "In order to satisfy the first test under Section 547(c)(2)—and prove that the Transfers were made in the ordinary course of the financial affairs of the debtor and the transferee—the Credit Union must demonstrate that they had "some consistency with other business transactions between the debtor and the creditor." *In re Magic Circle*

When the assailed payment was considered in light of these factors, there is no genuine issue of material fact that it fails to satisfy the ordinary course of business as between the parties analysis.

Concerning the "length of time" the parties were engaged in transaction at issue, there is no genuine issue of material fact that this was a "one-time" transaction in which the Debtor was borrowing money on an emergency basis in order to stay in business, and attempting to repay it before it filed bankruptcy.

Concerning the "amount or form of tender" as compared to past practices, there were no prior practices with which to compare it. While some courts have held that other parties in a one-time transaction do not veer from the terms of a written agreement, the agreement will define the ordinary course of business for the transaction. *In re Binder Ship Building & Repair Co., Inc.*, 2012 W.L. 5360986, *4 (B.Ct. S.D. Al. 2012). However, in the instant case, there is no evidence that there was ever any written agreement, or any agreement of any sort, to depart from other than that the Defendant, a friend of the Debtor's President, would advance money to the Debtor to keep it from going out of business and, obviously, that the Debtor would be protected when the inevitable bankruptcy came.

Concerning whether the Debtor or the creditor engaged in any unusual collection or payment activities, it is here where the transaction most clearly fails in the ordinary course of business analysis. The payment was made by a cashier's check on an account which the Debtor was using

---

> *Energy Corp.,* 64 B.R. 269, 273 (Bankr.W.D.Okla.1986). In making this determination, courts have considered various factors, including: (1) the length of time the parties have had a business relationship; (2) whether the subject transfer was higher than the amount usually paid; (3) the timing and method of payments; (4) any unusual collection activity by the creditor; and (5) whether the creditor did anything to gain an advantage (such as additional security) in light of the debtor's deteriorating finances. *Marathon Oil Co. v. Flatau (In re Craig Oil Co.)*, 785 F.2d 1563 (11th Cir.1986); *Richardson v. Philadelphia Housing Authority (In re Richardson),* 94 B.R. 56, 60 (Bankr.E.D.Pa.1988) (citations omitted). These factors all have some relevance here."

*In re Gaines,* 502 B.R. 633, 641 (B.Ct. N.D. Ga. 2013).

as a conduit to make payments to creditors because his regular business accounts had been locked by its creditors. The use of a cashier's check alone is sufficient to take the transaction out of the ordinary course of business transfer exception, *Marathon Oil Co. v. Flatau* (*In re Craig Oil Co.*), 785 F.2d 1563, 1566-1567 (11th Cir. 1986), that the use of a cashier's check paid, with funds funneled through a "dummy account" in order to evade creditors' claims, is the essence of unusual payment circumstances. See, *In re Gaines*, 502 B.R. 633, 642 (B.Ct. M.D. Ga. 2013), holding that a payment which is part of a fraudulent scheme cannot be a payment made in the ordinary course of business.

Further, considering the "circumstances under which the payment was made," it is clear that the Debtor was trying to protect a valued employee and repay that valued employee for a short-term advance to cover payroll. The circumstances under which the payment was made were anything but ordinary.

### 3. *Debt was not paid according to ordinary business terms*.

In looking at whether or not a transaction was out of the ordinary course of business in consideration of "ordinary business terms," the objective test, courts look at whether a transaction is "so idiosyncratic as to file outside the broad range" within the industry in which the debtor is a participant. *In re Gaines*, 643 (2013). There is absolutely nothing in the record to establish a repayment of a loan made to cover payroll, immediately prior to case filing, using a cashier's check purchased from a dummy bank account because the Debtor's regular bank account had been seized by creditors, could be construed as anything other than extraordinary, so that it could be shielded under ordinary business terms are not applicable.

The Debtor's assertion of the defense of substantial contemporaneous exchange, therefore, must fail for lack of new value, no evidence of intention to create a substantial contemporaneous exchange, and no substantial contemporaneous exchange.

### E. "Subsequent New Value" Defense Cannot Be Made Out.

Where there is a new advance or sale by the creditor after the assailed payment, 11 U.S.C. §547(c)(4), excepts from avoidance a transfer:

> "To or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor –

> (a) not secured by an otherwise unavoidable security interest;
> (b) on account of which new value the debtor did not make an otherwise unavailable transfer to or for the benefit of such creditor . . ."

Id.

The Defendant, at his fourth defense, attempts to set up that there is new value, advances, made by the Defendant to the Debtor after the repayment, which was three (3) days prior to the filing of the bankruptcy case. Assuming, *per argumentium*, that the payment was in repayment of debt and that the debt was owed by the debtor, it would be a defense if Defendant had made other advances to Debtor which had not been paid or for which there were avoidable payments. However, making this assumption *per argumentium*, there are no such advances. The payment was made and three (3) days later the Debtor filed bankruptcy. The Defendant made no new advances in those three (3) days, and there is nothing which would satisfy the requirement of the subsequent new advance defense. This defense fails on its face.

### F.  There is no defense to either a preference or fraudulent transfer claim that the claim is not "equitable".

Defendant's fifth defense is that recovery is not in the interest of equity. This is not a valid affirmative defense for a preference claim since 11 U.S.C. §547(c) lists, exclusively, affirmative defenses to preference claims and that the recovery is not "equitable" is not one of them, and it is certainly not a defense to a fraudulent transfer claim where the Debtor paid off the Debtor's President's personal obligations. Some people might believe that there should be an equitable bar to recovery under those circumstances, but this is a problem for Congress and not for the courts. There is no such defense to sustain.

### G.  Trustee is Entitled to a Recovery of Avoided Transfers Against Defendant.

11 U.S.C. §550 sets out the mechanism by which an avoided transfer is correct, and it applies to both transfers avoided under 11 U.S.C. §547 (preferential transfers) and also transfers avoided under 11 U.S.C. §549 (post-petition transfers). This section provides as follows:

> (a)  Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549,

        553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–
- (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
- (2) any immediate or mediate transferee of such initial transferee.

(b) . . .
(c) . . .
(d) The trustee is entitled only a single satisfaction under subsection (a) of this section.
(e) . . .
(f) . . .

11 U.S.C. § 550.

Since there is no genuine issue of material fact that Defendant was an immediate transferee of the payment made to it just prior to case filing and that the Trustee entitled to a judgment for the value of such property. The value of a transfer of cash is the value of the cash

### H.   Trustee is Entitled to Final Judgment Against Defendant.

Federal Rule of Civil Procedure 54, regarding entry of final judgment in general, is made applicable, with one difference not material here, is made applicable in adversary proceeding practice by R.Bankr.Pro. 7054. Fed.R.Civ.Pro. 54(b) provides as follows:

> **Judgment on Multiple Claims or Involving Multiple Parties.** When an action presents more than one claim for relief--whether as a claim, counterclaim, cross-claim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

This provides for a final determination of claims where other claims will be left pending and determination of claims against some parties where there are other parties left with pending claims, where the Court determines there is "no just reason for delay."

In the instant case, the claims were asserted against Defendant AEC as a conduit to Defendant American Pawn. Defendant AEC has not answered and is in default. Trustee believes it is assetless and will not pursue claims against it. At an appropriate time, it will be dismissed. There is no just reason for delay as to this Defendant.

Under these circumstances, the trial court may render final judgment under Rule 54 on claims sustained on summary judgment under Rule 56. See, e.g., *In re Thadikamalla*, 2012 W.L. 7009639 (B.Ct. N.D. Ga. 2012) (Trustee's request for final judgment on a single claim (of several) for an unauthorized post-petition payment certified as final judgment).

## V. CONCLUSION

In conclusion, with respect to the claims for which summary judgment was sought, there exists no genuine issue of material fact, and the Trustee is entitled to summary judgment under 11 U.S.C. 548 or under 11 U.S.C. §547. If summary judgment is granted, avoiding the transfers, then the Trustee is entitled to recovery against Defendant American Pawn and a final judgment against Defendant American Pawn for the value of the transfer under 11 U.S.C. §550(a) and under R.Bankr.Pro. 7054 (Fed.R.Civ.Pro. 54(b)).

Respectfully submitted this 20th day of November, 2015.

*/s/ Fife M. Whiteside*
Fife M. Whiteside
Ga. State Bar No. 756025
P. O. Box 5383
Columbus, GA 31906
(706) 320-1215
whitesidef@mindspring.com